## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| W.E.B PRODUCTION & FABRICATING, INC., individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br> v. <br><br> INSURANCE COMPANY OF THE WEST, <br><br> *Defendant*. | Case No. 1:23-cv-15379 <br><br> Judge: Hon. Sharon Johnson Coleman <br><br> **JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff W.E.B. Production & Fabricating, Inc. ("Plaintiff") brings this action on behalf of itself and all others similarly situated against Defendant Insurance Company of the West ("Defendant") for charging Plaintiff and the Class (defined below) workers' compensation insurance premiums calculated using an undisclosed and illegal methodology.

## NATURE OF THE ACTION

1.      This lawsuit seeks refunds of the unlawful workers' compensation insurance premiums Defendant charged Plaintiff and the putative Class.  As detailed further herein, Defendant has charged Plaintiff and the Class illegal insurance premiums calculated using secret, pretextual methods to determine Plaintiff's and the Class's "Schedule Rating Modification Factors" ("SRMFs").  The SRMFs are a limited set of criteria relating to an insured's business that, when totaled, compromise insureds' "Schedule Rating Modification" ("SRM").  The SRM can then make up a significant portion of the total cost of insureds' premiums.

2.      Defendant is required to file its method of calculating insureds' premiums with the Illinois Department of Insurance ("Insurance Department").  Beginning in 1997, if not earlier, Defendant has submitted "Schedule Rating Plans" to the Department of Insurance.  In each

1

Schedule Rating Plan submitted since 1997, Defendant represented, among other things, that it would calculate insureds' SRMFs, and consequent total SRMs, based solely on evidence relating to the SRMFs in Defendant's files at the time the SRMF is determined. Defendant also represents in its contracts with its insureds, including Plaintiff and the Class, that Defendant only utilizes the methods stated in its public rate filings when calculating insureds' premiums.

3.      These representations by Defendant were false when made, and Defendant knew they were false. Instead of using the method for calculating insureds' SRMFs and SRMs set forth in Defendant's publicly-filed Schedule Rating Plans, Defendant instead used a separate, secret methodology to calculate the minimum SRM necessary for Defendant to collect a sufficient profit on each policy. Defendant then required its underwriters to assign pretextual values to the SRMFs in order to reach or exceed the desired SRM (and consequent premium) (the "Pretextual Method"). Upon information and belief, Defendant has used this undisclosed and illegal Pretextual Method, or a similar undisclosed methodology, since at least 1997.

4.      These actions by Defendant breached its insurance policies with Plaintiff and the Class and violated various Illinois Statutes relating to insurance as well as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. ("ICFA"). Defendant also was unjustly enriched through its actions, which amount to fraudulent concealment and fraud.

5.      Plaintiff seeks restitution and damages, including punitive damages, stemming from Defendant's illegal actions. Plaintiff also seeks declaratory and injunctive relief, including an injunction requiring Defendant to cease and desist its use of the Pretextual Method, or any other methodology not disclosed in its public rate filings, in calculating the insurance premiums for its insureds.

## **PARTIES**

6.      Plaintiff W.E.B Production & Fabricating, Inc. is a full-service welding,

fabricating, and structural steel erecting company. Plaintiff was incorporated in Illinois and at all relevant times has had its headquarters in Cook County, Illinois. Plaintiff is therefore a domiciliary and citizen of Illinois.

7.     Defendant Insurance Company of the West sells worker's compensation insurance throughout Illinois, including in Cook County. Defendant is incorporated in California with its headquarters at 15025 Innovation Drive, San Diego, California.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of Illinois and Defendant is a citizen of California where it is incorporated and has its principal place of business.

9.     This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant (a) marketed its insurance products in Illinois; (b) sold workers' compensation insurance policies to Illinois residents; and therefore (c) derived substantial revenue from Illinois and availed itself of the privilege of doing business in Illinois.

10.    Venue is proper in this District because Defendant conducts substantial business in this District and throughout the State of Illinois, and because a substantial part of the events upon which this action is based occurred in this District.

## FACTUAL ALLEGATIONS

11.    Defendant reports on its website that it has approximately 300,000 policyholders and quotes more than $3 billion in insurance policies annually.[1] Upon information and belief, a

---

[1] *See* https://www.icwgroup.com/about/ (last accessed November 20, 2023).

significant portion of the policies are issued to Illinois insureds, including $31,058,670 of workers' compensation insurance premiums written in 2022. *See* ECF No. 1-2 at 11. Defendant further states on its website that one of its "Values" is "Integrity – Act with integrity, respect, care and trust."[2]

12. Illinois has a "file and approve" system where each insurer charges its own rates but is subject to close scrutiny and approval by the Insurance Department to protect workers and employers.

13. A file and approve system like the one used in Illinois has the purposes of, *inter alia*, preventing monopolistic practices, ensuring that carriers charge adequate rates to cover their losses, providing public access to rate information and curtailing discriminatory pricing.

14. Providers of workers' compensation insurance in Illinois are subject to numerous statutory and regulatory requirements, including that they pre-file various aspects of how insureds' premiums will be calculated with the Director of the Insurance Department (the "Director"). 215 ILCS 5/457(1) requires that "[e]very company shall prefile with the Director every manual of classifications, every manual of rules and rates, every rating plan and every modification of the foregoing *which it intends to use*." *Id.* (emphasis added). Pursuant to 215 ILCS 5/457(3), such filings "shall be open to public inspection as soon as filed." *Id.* 215 ILCS 5/457(4) requires that a "filing shall not be effective nor used until approved by the Director." *Id.* 215 ILCS 5/467 also provides that "[n]o person, company or organization shall willfully withhold information from, or knowingly give false or misleading information to the Director, any statistical agency designated by the Director, any rating organization, or any company which will affect the rates or premiums chargeable under this Article."

---

[2] https://www.icwgroup.com/about/mission-values/ (last accessed November 20, 2023).

15.     In Defendant's Schedule Rating Plans, filed with the Insurance Department in various iterations since at least 1997, Defendant stated that insureds' premiums would calculated in part by applying an SRM to insureds' base premiums.[3]  The Schedule Rating Plans further explain that surcharges (if the SRM is positive) or discounts (if the SRM is negative) are applied to insureds' base premiums by multiplying the base premium by the insureds' SRM.  For example, if an insured had a base premium of $100,000, and was assessed an SRM of 1.50,[4] the insureds' ultimate premium (not taking into account other charges and factors) would be $150,000, with $50,000 of the premium being attributable to the SRM.

16.     Defendant further represents through the Schedule Rating Plans that the SRM is calculated based upon specific factors relating to the insureds' own business (the SRMFs).  These factors include, *inter alia*, Class Fit,[5] Condition of Premises, Risk Management/Safety, and other factors that "distinguish [the insured] from average for the classification and/or the type of business."  Ex. A at 1.  In other words, if an insured takes the initiative (and potentially makes a financial investment) to improve their business practices and the safety of their workplaces, they may benefit from a lower SRM (and reduced premiums), under the Schedule Rating Plans filed by Defendant.

17.     In each of its Schedule Rating Plans filed with the Insurance Department since 1997, Defendant represented that it would calculate insureds' SRMFs, and consequent total SRMs,

---

[3] The most recent Schedule Rating Plan Defendant filed with the Insurance Department in 2017 is attached as Exhibit A.

[4] Under the current Schedule Rating Plan, an insured could receive an SRM of 1.50 by being assigned total combined "debits" of 50%, without any corresponding offsetting "credits."  *See* Ex. A at 1.  This could occur, for example, if an insured received a 25% debit for "Class Fit" and a 25% debit for "Condition of Premises," which would total a 50% debit, or a 1.50 SRM.

[5] "Class Fit" is based on the extent to which an insured's operations are more or less risky than average for the insureds' industry.  *See* Ex. A at 1 (describing Class Fit factor as considering "[h]ow the insured's operations compare to those normally contemplated within their class code(s).").

based solely on evidence relating to the SRMFs in Defendant's files at the time the SRMF is determined. *See, e.g.,* Ex. A at 2 (SRMFs "shall be based on evidence that is contained in the file of the insurer at the time the schedule debit or credit is applied."). In other words, for each new or renewal policy insureds' SRMFs are required to be assessed solely based on the characteristics of the insureds' business at that time. *See id.* ("Each policy (either new or renewal) will have a separate evaluation."). Defendant further represented, in each Schedule Rating Plan since 2009, that it would document the basis for each SRMF in a "Schedule Rating Worksheet." *See id.* at 2, 3. Finally, Defendant represents in its contracts with its insureds, including Plaintiff and the Class, that Defendant will only utilize the methods stated in its public rate filings when calculating insureds' premiums.[6]

18.     Despite these representations by Defendant, Defendant does not actually use the methodology from its publicly filed Schedule Rating Plans to calculate insureds' SRMFs and SRMs. Instead, beginning as early as 1997, Defendant has used the secret Pretextual Method, or similar undisclosed method, whereby Defendant first calculates what it believes to be the minimum SRM needed in order for obtain a sufficient profit for each policy. Defendant then requires its underwriters to assign pretextual values to the SRMFs in order to meet or exceed the minimum SRM (and consequent premium) sought by Defendant.

19.     Put another way, an insured could run their business in such a skilled and safe manner that they would be assigned an SRM below 1.00 (and therefore receive a reduction of their base premium) because the insured's SRMF factors, fairly assessed, would result in "credits" combining to an SRM below 1.00. However, under Defendant's secret Pretextual Method the

---

[6] *See, e.g.,* Ex. B at 12 ("All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications."); *see also id.* ("The final premium will be determined after this policy ends by using . . . the proper classifications and rates that lawfully apply to the business and work covered by this policy.").

minimum SRM is already determined, based on Defendant's desired profit, before an insured's actual SRMFs are even considered. And if the minimum SRM required by Defendant is, for example, 1.25 in order to meet Defendant's profit target, Defendant's underwriters are required to assign SRMFs that, when combined, at least meet if not exceed this SRM, regardless of what an actual fair assessment of the insureds' SRMFs would be at that time.

20.     In using the undisclosed Pretextual Method, Defendant violated its agreements with Plaintiff and the Class, as well as its legal obligations, to calculate SRMFs based solely on evidence relating to the SRMFs in Defendant's files at the time the SRMF is determined, and to provide a separate evaluation of the SRMFs for each policy. *See, e.g.,* Ex. A at 2. And to the extent that Defendant ever even recorded any bases for the SRMFs in Schedule Rating Worksheets, as it was required to do pursuant to its Schedule Rating Plans, Defendant failed to do so because the pretextual SRMFs (and bases for such SRMFs) in the Schedule Rating Worksheets were false and were not determined based on the method set forth in the Schedule Rating Plans.

21.     Defendant violated 215 ILCS 5/457 and 215 ILCS 5/467 by using the secret, unfiled Pretextual Method to determine Plaintiff and the Class Members' SRMFs and SRMs. *See, e.g.,* 215 ILCS 5/457(1) ("Every company shall profile with the Director every manual of classifications, every manual of rules and rates, every rating plan and every modification of the foregoing which it intends to use."); 215 ILCS 5/467 ("No person, company or organization shall willfully withhold information from, or knowingly give false or misleading information to the Director, any statistical agency designated by the Director, any rating organization, or any company which will affect the rates or premiums chargeable under this Article.").

22.     Defendant's actions also violated 215 ILCS 5/462(b), which mandates that insurance companies "shall apply correct classifications, payrolls and other factors of a rating system to compute premiums." *Id.* Section 5/462(b) further requires that if, as here, the

"application of incorrect classifications, payrolls or any other factors of a rating system results in the payment by an insured of premiums in excess of the premiums that would have been paid utilizing the correct applications of classifications, payrolls or other factors of a rating system," then the insurer "shall refund to the insured the excessive premium paid for the period during which the incorrect application of classifications, payrolls or other factors of a rating system were applied." *Id.*

23.     Defendant's knowing and intentional application of the secret Pretextual Method, or similar undisclosed methodology, for decades in order to improve Defendant's bottom line, while at the same time purporting to utilize an entirely different system in its publicly-filed Schedule Rating Plans that claimed to reward insureds for their efforts in improving the safety and management of their business, amounts to fraud on Plaintiff and the Class and fraudulent concealment.

**Facts Specific to Plaintiff**

24.     Plaintiff purchased workers' compensation insurance from Defendant including policies effective for the periods January 28, 2018 through January 28, 2019 ("2018 Policy"), January 28, 2019 through January 28, 2020 ("2019 Policy"), January 28, 2021 through January 28, 2022 ("2021 Policy") and January 28, 2022 through January 28, 2023 ("2022 Policy").[7] Under these Policies, Defendant unlawfully charged Plaintiff insurance premium rates determined by using the undisclosed Pretextual Method.

25.     Each Policy provided that "[a]ll premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications." *See, e.g.,* 2022 Policy at 12. The Policies further provided that "[t]he final premium will be determined after this policy ends by using the

---

[7]     The 2018 Policy, 2019 Policy, 2021 Policy and 2022 Policy are attached as Exhibits B-E, respectively.

actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." *See, e.g., id.*

26.     Plaintiff was assigned an SRM of 1.25 for its 2018 Policy and was charged premiums by Defendant based in part on the SRM. Defendant assigned the 1.25 SRM to Plaintiff for its 2018 Policy based on its use of the Pretextual Method.

27.     Defendant's use of the 1.25 SRM increased Plaintiff's premiums for the 2018 Policy period by approximately $14,612.02.

28.     Plaintiff was assigned an SRM of 1.25 for its 2019 Policy and was charged premiums to Defendant based in part on the SRM. Defendant assigned the 1.25 SRM to Plaintiff for its 2019 Policy based on its use of the Pretextual Method.

29.     Defendant's use of the 1.25 SRM increased Plaintiff's premiums for the 2019 Policy period by approximately $16,950.43.

30.     Plaintiff was assigned an SRM of 1.70 for its 2021 Policy and was charged premiums by Defendant based in part on the SRM. Defendant assigned the 1.70 SRM to Plaintiff for its 2021 Policy based on its use of the Pretextual Method.

31.     Defendant's use of the 1.70 SRM increased Plaintiff's premiums for the 2021 Policy period by approximately $27,723.38.

32.     Plaintiff was assigned an SRM of 1.50 for its 2022 Policy and was charged premiums by Defendant based in part on the SRM. Defendant assigned the 1.50 SRM to Plaintiff for its 2022 Policy based on its use of the Pretextual Method.

33.     Defendant's use of the 1.50 SRM increased Plaintiff's premiums for the 2022 Policy period by approximately $20,471.23.

34.     In total, Defendant has charged Plaintiff approximately $79,757.03 in excess premiums due to Defendant's unlawful use of the secret Pretextual Method to determine Plaintiff's

SRM and consequent premiums.

35.    Neither Plaintiff nor the members of the Class had any reasonable way to learn that Defendant was secretly using the Pretextual Method to determine their SRMFs and SRMs because Defendant has publicly represented, and continues to publicly represent through its rate filings and agreements with its insureds, that Defendant only uses the method stated in the Schedule Rating Plans.

## CLASS ALLEGATIONS

36.    Plaintiff brings this action, individually and on behalf of a class, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4). The Class is defined as follows:

> All Illinois insureds of Defendant whose workers' compensation insurance premiums were calculated using a Schedule Rating Modification in excess of 1.00, and where such calculation resulted in the insured being charged a higher premium than the insured would have otherwise paid. The Class is further limited to those Illinois insureds of Defendant's who were issued workers' compensation insurance policies by Defendant on or after August 1, 1997.

37.    Excluded from the Class are Defendant; Defendant's employees and agents; any judge conducting proceedings in this action and the judge's parents, spouses and children as well as any other member of the judge's family residing in the judge's household; counsel of record in this action and their parents, spouses and children as well as any other member of counsel's family residing in counsel's household; counsel's employees; and the legal representatives, heirs, successors and assigns of any excluded person.

38.    Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to modify, change or expand the definition of the Class as appropriate, including through the use of subclasses.

39.    **Numerosity:** The exact number of the members of the Class is not presently known but is so numerous that joinder of individual members is this action is impracticable. Based on the nature of the activities alleged, Plaintiff believes that the members of the class number in the

10

thousands.

40.      Class members are readily identifiable from information and records in possession, custody, or control of Defendant and the Class members.

41.      **Commonality:**  There are numerous issues of law and fact common to Plaintiff and Class Members that predominate over any issue affecting only individual class members. Resolving these common issues will advance resolution of the litigation for all class members. These common issues of law and fact include, but are not limited to, the following:

a.      Whether Defendant filed the Pretextual Method with the Insurance Department;

b.      Whether Defendant publicly disclosed its use of the Pretextual Method;

c.      Whether Defendant violated 215 ILCS 5/457 by failing to file the Pretextual Method with the Insurance Department;

d.      Whether Defendant violated 215 ILCS 5/457 by failing to publicly disclose its use of the Pretextual Method;

e.      Whether Defendant violated 215 ILCS 5/457 by hiding the true methodology it used to determine the SRMs, and consequent premiums, of Plaintiff and the Class;

f.      Whether Defendant violated 215 ILCS 5/467 by filing Schedule Rating Plans with the Insurance Department that Defendant did not use, or intend to use, to calculate the SRMs, and consequent premiums, of Plaintiff and the Class;

g.      Whether Defendant violated 215 ILCS 5/467 by failing to file the Pretextual Method with the Insurance Department;

h.      Whether Defendant violated 215 ILCS 5/467 by failing to publicly disclose its use of the Pretextual Method;

i.      Whether Defendant violated 215 ILCS 5/467 by hiding the true methodology it used to determine the SRMs, and consequent premiums, of Plaintiff and the Class;

j.      Whether Defendant violated 215 ILCS 5/462(b) by filing Schedule Rating Plans with the Insurance Department that Defendant did not use, or intend to use, to calculate the SRMs, and consequent premiums, of Plaintiff and the Class;

k.      Whether Defendant violated 215 ILCS 5/462(b) by failing to file the Pretextual Method with the Insurance Department;

l.      Whether Defendant violated 215 ILCS 5/462(b) by failing to publicly disclose its

use of the Pretextual Method;

m.    Whether Defendant breached Defendant's contracts for insurance with Plaintiff and the Class through its conduct;

n.    Whether Defendant violated the ICFA through its conduct;

o.    Whether Defendant was unjustly enriched through its conduct;

p.    Whether Defendant's actions constitute fraudulent concealment;

q.    Whether Defendant's actions constitute fraud;

r.    Whether Defendant concealed its improper and illegal actions from members of the Class;

s.    Whether Plaintiff and the Class are entitled to declaratory and injunctive relief; and

t.    The proper measure and type of damages for each claim.

42.    **Typicality**:  Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff, like all members of the Class, has been charged illegal insurance premiums by Defendant through its use of the Pretextual Method.  Plaintiff, like all members of the Class, was damaged by Defendant's misconduct and suffered actual damages as a result of Defendant's illegal scheme.  Furthermore, the factual bases of Defendant's misconduct are common to Plaintiff and the Class, and represent a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff has the same interest in this matter as all members of the Class, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all members of the Class.

43.    **Adequacy:**  Plaintiff has no interests that conflict with the interests of the Class, understands and appreciates its duties to the Class, and is committed to pursuing this action vigorously on behalf of the Class.  Plaintiff has also retained counsel that are competent and experienced in complex consumer class action litigation and insurance law.  Accordingly, Plaintiff and its counsel will fairly and adequately protect the interests of the Class.  If necessary, Plaintiff may seek leave of this Court to amend this complaint in order to (a) include additional

representatives to represent the Class; (b) include additional claims as may be appropriate; and/or (c) amend the definition of the Class or propose subclasses.

44.     **Superiority:**  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual member of the Class is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for individual members of the Class to effectively redress the wrongs done to them.  And even if the members of the Class could afford individualized litigation, the court system could not.  Individualized litigation would increase delay and expense to all parties, and to the court system, because of the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## TOLLING, CONCEALMENT AND ESTOPPEL

45.     Any statute of limitation applicable to Plaintiff's or Class members' claims are tolled as a result of Defendant's knowing and active concealment of its conduct alleged here.

46.     Among other things, Defendant affirmatively hid the true manner in which it calculated insureds' SRMFs, SRMs and consequent premiums, through the Pretextual Method, while misrepresenting to Plaintiff and the Class that their SRMFs and SRMs would be calculated in the legal manner identified in Defendant's Schedule Rating Plans.

47.     Plaintiff and the members of the Class members did not have the information essential to pursue their claims, without any fault or lack of diligence on their own part.

48.     Under the circumstances, Defendant was under a duty to disclose the true character,

quality, and nature of its activities to Plaintiff and the Class. Defendant therefore is estopped from relying on any statute of limitations.

49.     All applicable statutes of limitations have been tolled by operation of the discovery rule. Plaintiff and other members of the Class could not have learned through the exercise of reasonable diligence of Defendant's conduct as alleged herein.

50.     Information about Defendant's secret use of the Pretextual Method in calculating the SRMFs and SRMs of its Illinois insureds did not become publicly known until approximately September 13, 2023, when Plaintiff initially filed this action in Illinois State Court.

## FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

51.     Plaintiff incorporates the allegations in paragraphs 1 to 50 as if fully set forth herein.

52.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

53.     Plaintiff and the Class entered into binding contracts with Defendant for it to provide workers' compensation insurance to Plaintiff and the Class.

54.     Upon information and belief, these standard form contracts provided in pertinent part that "[a]ll premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance." 2022 Policy at 12. The contracts further provide that "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." *Id.*

55.     Plaintiff and each member of the Class purchased a workers' compensation insurance policy from Defendant and were charged a premium by Defendant based in part on Defendant's unlawful application of an SRM determined by the undisclosed Pretextual Method,

and not by the method stated in Defendant's Schedule Rating Plans or other "manuals of rules, rates, rating plans and classifications." *Id.*

56.     Defendant further breached its agreements with Plaintiff and the Class by charging insurance rates that were not calculated in a lawful manner.  For the reasons set forth herein, Defendant's use of the undisclosed Pretextual Method was unlawful.  Accordingly, Defendant's assessment of unlawful rates is a breach of Defendant's insurance agreements with Plaintiff and the Class which promise that Defendant will only charge insurance rates "that lawfully apply to the business and work covered by this policy." *Id.*

57.     Plaintiff has performed all of the terms of its agreements with Defendant except for those for which performance has been excused by Defendant's unlawful conduct.

58.     Plaintiff provided Defendant notice of Plaintiff's claims by FedExed letter received by Defendant on August 9, 2023.  Counsel for the parties subsequently communicated but were unable to reach a resolution of Plaintiff's class claims, leaving Plaintiff with no other means of redress apart from bringing this class action.

59.     As a direct and proximate result of Defendant's breach of the agreements, Plaintiff and the Class have suffered losses in an amount exceeding the jurisdictional minimum of this Court.

## SECOND CLAIM FOR RELIEF
## (VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1 *ET SEQ.*)

60.     Plaintiff incorporates the allegations in paragraphs 1 to 50 as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

62.     At all times relevant hereto, the ICFA was in full force and effect.

63.     The ICFA is a regulatory and remedial statute intended to protect consumers,

including Plaintiff and the Class, against unfair or deceptive acts or practices. Specifically, Chapter 2 of the ICFA prohibits unfair or deceptive acts or practices used or employed in the conduct of any trade or commerce with the intent that others rely upon such deceptive acts or practices. *See* 815 ILCS 505/2.

64.     Section 2 provides that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

65.     As alleged in detail *supra*, Defendant made material misrepresentations and otherwise failed to disclose material information, namely that it would use the secret and illegal Pretextual Method, and not its publicly-filed Schedule Rating Plans, to calculate the SRMFs and SRMs, and consequent premiums, of Plaintiff and the Class. Defendant's failure to file, or publicly disclose, its true method of calculating insureds' SRMFs and SRMs, and Defendant's deceit in claiming to use an entirely different methodology, constitute unfair and/or deceptive acts or practices prohibited by Chapter 2 of ICFA. *See* 815 ILCS 505/2. Defendant also misrepresented in its policies with Plaintiff and the Class that it would only use "the proper classifications and rates that lawfully apply to the business and work covered by th[e policies]" in calculating insureds' premiums.

66.     Defendant intended that Plaintiff and the Class rely on Defendant's deceptive acts and practices as alleged in detail *supra*, and Plaintiff and the Class did so rely.

67.     Defendant's intent that Plaintiff and the Class rely on Defendant's deceptive acts

and practices is evidenced by, *inter alia*, Defendant's knowing promulgation of the publicly-filed Schedule Rating Plans while instead actually using, and continuing to use, the secret Pretextual Method.

68.     Plaintiff and the other members of the Class are "consumers" or "persons" as defined under the ICFA.

69.     The above-described unfair and/or deceptive acts and practices occurred in the course of conduct involving trade or commerce, namely the sale of workers' compensation insurance policies.

70.     Defendant's business acts or practices also offend an established public policy, as Defendant engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, as alleged in detail herein.  Therefore, Defendant's actions are unfair and/or deceptive acts or practices prohibited by Chapter 2 of the ICFA.  *See* 815 ILCS 505/2.

71.     The unfair acts and practices alleged herein proximately caused actual damage to Plaintiff and the Class, including but not limited to the actual amounts they were overcharged for their insurance premiums due to the Defendant's unlawful use of the secret Pretextual Method.

72.     Plaintiff and the other members of the Class have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

73.     Plaintiff is also entitled to injunctive relief.  Plaintiff and the Class continue to be charged unlawful premiums by Defendant and/or could be charged such unlawful premiums in the future.  Accordingly, the Court should enjoin Defendant from continuing its unlawful conduct.

### THIRD CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

74.     Plaintiff incorporates the allegations in paragraphs 1 to 50 as if fully set forth herein.

75.     Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

76.     Plaintiff and members of the Class conferred a benefit on Defendant in the form of monies paid for their workers' compensation insurance policies in exchange for the promised insurance at a premium calculated, as required by law, in the manner stated by the policies and in Defendant's public filings.

77.     Defendant voluntarily accepted and retained this benefit by accepting payment from Plaintiff and the Class.

78.     Defendant has retained this benefit even though it has failed to provide Plaintiff and the Class the promised insurance at a premium rate calculated in the manner promised by Defendant, and required by law, making Defendant's retention unjust under the circumstances. Accordingly, Defendant should return the full amount of the premiums paid by Plaintiff and the Class or, in the alternative, the amount the premiums were increased by any SRM above 1.00.

79.     It would be unjust and inequitable for Defendant to retain the benefit, and Defendant should be required to disgorge this unjust enrichment.

**FOURTH CLAIM FOR RELIEF**
**(FRAUDULENT CONCEALMENT)**

80.     Plaintiff incorporates the allegations in paragraphs 1 to 50 as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

82.     Defendant falsely claimed in its publicly-filed Schedule Rating Plans that it would calculate insureds' SRMFs and SRMs, and consequent premiums, based solely on evidence relating to the SRMFs in Defendant's files at the time the SRMF is determined. Defendant further falsely represented in its contracts with its insureds, including Plaintiff and the Class, that Defendant would only utilize the methods stated in its rate filings when calculating insureds' premiums.

83. At the same time, Defendant knew that it was not calculating insureds' SRMFs and SRMs based on the method detailed in the Schedule Rating Plans, because it was instead secretly using the Pretextual Method to calculate the minimum SRM necessary for Defendant to collect a sufficient profit on each policy, and requiring its underwriters to assign pretextual values to the SRMFs in order to reach or exceed the desired SRMs (and consequent premiums).

84. Defendant's failure to disclose to Plaintiff and the Class the material facts that (1) Defendant was secretly using the illegal Pretextual Method to calculate insureds' SRMFs and SRMs; and (2) Defendant was not using the method it claimed to use in the Schedule Rating Plans, which would purportedly provide insureds' lower premiums in exchange for improving their business practices and workplace safety, constituted fraudulent omissions.

85. As a result of Defendant charging illegal premiums based on the secret, unfiled Pretextual Method, Plaintiff and the Class were forced to pay illegal premiums above what Defendant was entitled to charge. *See, e.g.,* 215 ILCS 5/462(b).

86. By omitting this material information, Defendant intended to induce, and did induce, Plaintiff and the Class into paying insurance premiums above what Defendant was legally permitted to charge, based on the unfiled Pretextual Method.

87. Plaintiff and the Class would not have purchased workers' compensation insurance policies from Defendant, or would not have paid as much for the policies, if they had known that Defendant would calculate the premiums for such policies using a secret illegal methodology.

88. Because of Defendant's fraudulent omissions, Plaintiff and the Class have suffered injury, and will suffer injury in the future, in the form of illegal premiums charged by Defendant.

## FIFTH CLAIM FOR RELIEF
### (FRAUD)

89. Plaintiff incorporates the allegations in paragraphs 1 to 50 as if fully set forth herein.

90. Plaintiff brings this claim individually and on behalf of the members of the

proposed Class against Defendant.

91.     Defendant falsely claimed in its publicly-filed Schedule Rating Plans that it would calculate insureds' SRMFs and SRMs, and consequent premiums, based solely on evidence relating to the SRMFs in Defendant's files at the time the SRMF is determined. Defendant further falsely represented in its contracts with its insureds, including Plaintiff and the Class, that Defendant would only utilize the methods stated in its rate filings when calculating insureds' premiums.

92.     The foregoing misrepresentations were deceptive, false, and misleading because, at the time they were made, Defendant knew that it did not, and would not, use the method of calculating SRMFs and SRMs stated in its publicly-filed Schedule Rating Plans, and that it was instead secretly using the illegal Pretextual Method described herein.

93.     The actual methodologies used by Defendant to calculate insureds' premiums are highly material to Plaintiff and the Class because, *inter alia*, such methodologies determine the price of workers' compensation insurance that Plaintiff and the Class are required by law to obtain in order to operate their businesses, and allow insureds to shop for the best insurance policies for their businesses.

94.     As a result of Defendant charging illegal premiums based on the secret, unfiled Pretextual Method, Plaintiff and the Class were forced to pay illegal premiums above what Defendant was entitled to charge. *See, e.g.,* 215 ILCS 5/462(b).

95.     Defendant intended that the foregoing misrepresentations be relied upon by purchasers of its workers' compensation insurance policies. Plaintiff and the Classes were exposed to, and relied upon, the foregoing misrepresentations when purchasing their policies from Defendant.

96.     Plaintiff and the Class would not have purchased workers' compensation insurance

policies from Defendant, or would not have paid as much for the policies, if they had known that Defendant would calculate the premiums for such policies using a secret illegal methodology.

97.     Because of Defendant's false, deceptive, and misleading representations, Plaintiff and the Class have suffered injury, and will suffer injury in the future, in the form of illegal premiums charged by Defendant.

<b>SIXTH CLAIM FOR RELIEF</b>
<b>(DECLARATORY AND INJUNCTIVE RELIEF)</b>

98.     Plaintiff incorporates the allegations in paragraphs 1 to 50 as if fully set forth herein.

99.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

100.     Plaintiff brings this cause of action for itself and the Class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration on behalf of Defendant's workers' compensation insurance policyholders that it is a violation of Illinois law, and Defendant's insurance contracts with its policyholders, for Defendant to calculate policyholders' SRMFs, SRMs and consequent premiums using the Pretextual Method or any other method not filed with, and approved by, the Insurance Department.

101.     This Court has the power to declare the rights of said policyholders, and those who would be insured under such policies, as well as those who may suffer similar injury in the future from Defendant's actions.

102.     Plaintiff, for itself and on behalf of the Class, seeks a declaration of Plaintiff's rights under its policies with Defendant, and seeks a declaration of the rights and liabilities of the parties herein.

103.     Absent judicial intervention, Defendant will seek to continue to secretly use the Pretextual Method in calculating policyholders' SRMFs, SRMs and premiums instead of the method it purports to use, and is required to use, in its publicly-filed Schedule Rating Plan.

Plaintiff has no plain, speedy, or adequate remedy at law in the face of Defendant's continuing use of the Pretextual Method, the interests of the parties favor an injunction, and an injunction is in the public interest.

104.    Plaintiff therefore seeks an order permanently enjoining Defendant from using the Pretextual Method, or any other method not filed with and approved by the Insurance Department, to calculate policyholders' SRMFs, SRMs or premiums.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff, on behalf of itself and the proposed Class, respectfully requests that this Court enter an Order:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4), and certifying the Class defined herein;

B.    Designating Plaintiff as representative of the Class and its counsel as counsel for the Class;

C.    Finding in favor of Plaintiff and the putative Class on all counts asserted herein;

D.    Granting declaratory and injunctive relief, including an injunction requiring Defendant to cease and desist its use of the Pretextual Method, or any other methodology not disclosed in its public rate filings, in calculating the insurance premiums for its insureds including Plaintiff and the Class;

E.    Finding that permitting Defendant to retain funds obtained from Plaintiff and the Class would be unjust;

F.    Ordering disgorgement of all funds unjustly retained by Defendant;

G.    Awarding Plaintiff and the Class compensatory, statutory, and punitive damages;

H.    Awarding Plaintiff and the Class attorneys' fees, their costs and prejudgment and post-judgment interest thereon; and

I.    Granting all such further and other relief, including equitable relief, as the Court deems just and appropriate.

<b><u>JURY TRIAL DEMANDED</u></b>

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 20, 2023               Respectfully submitted,

*/s/ Carl V. Malmstrom*
Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

Scott M. Priz
**PRIZ LAW, LLC**
3230 S. Harlem Avenue, Suite 221B
Riverside, IL 60546
Tel: (708) 268-5768
priz@priz-law.com

Michael Liskow
**GEORGE FELDMAN MCDONALD, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (561) 232-6002
Fax: (888) 421-4173
mliskow@4-justice.com

*Attorneys for Plaintiff*