**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| W.E.B PRODUCTION & FABRICATING, INC., individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:23-cv-15379 |
| | ) | |
| Plaintiff, | ) | |
| | ) | The Honorable Judge Sharon Johnson |
| v. | ) | Coleman |
| | ) | |
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT INSURANCE COMPANY OF
THE WEST'S CORRECTED REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**DENTONS US LLP**

Mark L. Hanover (ARDC # 6216201)
Kristine M. Schanbacher (ARDC # 6310112)
Emily C. Eggmann (ARDC # 6335831)
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel.:  (312) 876-8000
Fax:  (312) 876-7934
*mark.hanover@dentons.com*
*kristine.schanbacher@dentons.com*
*emily.eggmann@dentons.com*

Kelly R. Graf (admitted *pro hac vice*)
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel.:  (213) 623-9300
Fax:  (213) 623-9924
*kelly.graf@dentons.com*

*Attorneys for Defendant
Insurance Company of the West*

**INTRODUCTION**

In its Opposition to Defendant's Motion to Dismiss (ECF No. 38) ("Opposition" or "Opp."), Plaintiff fails to adequately address the dispositive pleaded facts that: (a) ICW filed its Schedule Rating Plan with the DOI, allowing application of Schedule Rate Modifications (SRMs) *within a specified range*; (b) ICW's public filing explicitly disclosed (multiple times) that the specific SRMs to be applied reflect *the product of underwriting "judgment"*; (c) *ICW disclosed to Plaintiff* the SRMs for its policies; and (d) the disclosed SRMs *fell within the approved range.*

Plaintiff's Opposition attaches extensive extrinsic materials (neither incorporated in nor referenced by the Amended Complaint) and cites ███████████████████████████ that have no conceivable bearing on the underlying Illinois policies. Plaintiff also repeatedly mischaracterizes ICW's underwriting process as a "secret" and "pretextual method," but cites no factual basis for such conclusion—and mere repetition fails to render Plaintiff's claims viable.

In sum, Plaintiff fails to plead a cause of action arising out of ICW's application of a *disclosed* rate modification, *within* the approved range, consistent with the *judgment* filed with and approved by the DOI. Accordingly, the Court should dismiss the Amended Complaint in its entirety.

**ARGUMENT**

I.    **The Court Should Disregard The Extrinsic Materials Attached To Plaintiff's Opposition, Which Are Neither Incorporated In Nor Referenced By The Amended Complaint.**

Plaintiff attached to its Opposition various "additional evidence," comprising documents produced by ICW ███████████████████████████. (*See* Opp., pp. 5-6.) These documents are not incorporated in nor referenced by the Amended Complaint (*see generally* ECF No. 13, Am. Compl.), and Plaintiff offers no justification for lobbing these materials into the record on a Rule 12(b)(6) motion for failure to state a claim. The Court should

1

disregard these extrinsic materials. *See, e.g.*, *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (on a motion to dismiss, the court "must consider not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice") (internal quotations and citations omitted); *Petri v. Gatlin*, 997 F. Supp. 956, 981 n.18 (N.D. Ill. 1997) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(6), the court may not look beyond the pleadings[.]") (internal quotations omitted). Even if it were otherwise proper to submit extrinsic materials in opposition to a Rule 12(b)(6) motion, Plaintiff utterly fails to tie such materials to the allegations of the Complaint, and tellingly ignores the option to seek leave to amend (presumably because further amendment would be futile).

Moreover, these submitted extrinsic documents bear no relevance to the central allegation that ICW allegedly violated the *Illinois Insurance Code* through its underwriting practices *in Illinois*. Instead, Plaintiff's discussion of the submitted documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp., p. 6.) To the extent the Amended Complaint is premised on sheer speculation (*i.e.*, ICW's practices have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), Plaintiff tacitly *admits* the absence of a good faith basis to plead purported violations of Illinois law, which demonstrates why the Amended Complaint should be dismissed as a matter of law.

## II.    Plaintiff Has Not Alleged A Violation Of Illinois Law.

Plaintiff's Opposition recites three provisions of the Illinois Insurance Code (215 ILCS 5/457, 215 ILCS 5/467, and 215 ILCS 5/462b) and attempts to tie them to paragraphs in the Amended Complaint—but those paragraphs merely recite legal conclusions and offer no

supporting factual basis. (*See* Opp., pp. 7-8.) For example, Plaintiff asserts that ICW violated 215 ILCS 5/467 "by willfully lying to the DOI." (Opp., p. 7.) But the only "support" for this assertion is irrelevant extrinsic documents ████████████████████████████. (Opp., p. 7.) Tellingly, Plaintiff does not even bother to cite any particular paragraph of the Amended Complaint that would offer factual support for alleged willful "lying to the DOI"—because there is none. *See, e.g.*, *Lebow v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 86 C 8196, 1987 WL 12186, at *1 (N.D. Ill. June 11, 1987) ("[O]n a motion to dismiss, the court's consideration is limited to the pleadings; the complaint may not be 'amended' by arguments in the briefs in opposition to the motion.") (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). By failing to identify *any required information* that ICW allegedly withheld or misrepresented, Plaintiff has not adequately pled any violation of 215 ILCS 5/467 (prohibiting "wilfull[ ] withhold[ing of] information [or] knowingly giv[ing] false or misleading information"). (*See* Mem., p. 6.)

Similarly, Plaintiff's citation to 215 ILCS 5/457 falls far short of stating a viable claim. The Opposition offers a single sentence insisting that the Amended Complaint pleads a statutory violation (Opp., p. 7), but the cited paragraphs offer *no factual basis* for the Court to infer a statutory violation based on alleged failure to prefile "every manual of classifications, every manual of rules and rates, every rating plan, and every modification of the foregoing which it intend[ed] to use[.]"[1] (*Compare* Am. Compl., ¶¶ 18-21 *with* 215 ILCS 5/457.)

---

[1] In footnote 7 of Plaintiff's Opposition, counsel for Plaintiff states that counsel for ICW "improperly omits the key phrase" of 215 ILCS 5/457. Not true. Page 5 of ICW's Motion fully quotes the "key phrase" referenced by Plaintiff, and then later quotes the statute again *with an ellipsis* to indicate omission for brevity. (Mem., p. 5.) This edit complies with the Bluebook, *see* Bluebook R. 5.3 ("Omission of a word or words is generally indicated by the insertion of an ellipsis[.]"), and Plaintiff's counsel should be admonished for any suggestion of sharp practices.

Further, despite Plaintiff's contrary protestations, the Amended Complaint does not adequately allege any violation of 215 ILCS 5/462b, because *there is no pleaded factual basis* for inferring that ICW somehow failed to file a Schedule Rating Plan, or that the SRMs applied to Plaintiff were erroneous. (*See* Mem., p. 7.) Plaintiff further argues that 215 ILCS 5/462b requires insurance companies to return any excess premiums based on an "unfiled methodology"—but this does not comport with the plain language of 215 ILCS 5/462b or *West Bend*. *See* 215 ILCS 5/462b (insurer shall refund excessive premiums due to "*incorrect application* of classifications, payrolls, or other factors[,]" without mention of "unfiled methodologies") (emphasis added); *W. Bend Mut Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 794 F.3d 666, 670 (7th Cir. 2015) (insurer must refund overage when premium is calculated "*incorrectly*[,]" without mention of "unfiled methodologies") (emphasis added).

Plaintiff ignores the sole Illinois Appellate Court case interpreting 215 ILCS 5/462b and 215 ILCS 5/457, which found violations only where the insurer *entirely* "*failed to file* ... its classification plans, special risks, payrolls, and any and all other facts related to the rating system relief upon to compute premiums[.]" *Cas. Ins. Co. v. Hill Mechanical Grp.*, 323 Ill. App. 3d 1028, 1035, 753 N.E.2d 370, 375-76 (2001). That is not the circumstance here. Plaintiff *concedes that ICW submitted its rate filing to the DOI*, but asserts that the filing somehow violated the Insurance Code in an unsupported and unspecified manner. Plaintiff's conclusory repetition that ICW engaged in a "secret" and "undisclosed Pretextual Method" does not connect to any purported failure to apply "correct classifications, payrolls and other factors of a rate system to compute premiums." *See* 215 ILCS 5/462b. Contrary to Plaintiff's nefarious suggestions, ICW's Schedule Rating Plan (filed with and approved by the DOI) allowed SRMs ranging from a credit (or discount) of -50% to a debit (or surcharge) of +75% (Am. Compl., ¶¶ 1-3; *id.* at Ex. A, Schedule

Rating Plan), and the four SRMs assigned to Plaintiff's policies fell exactly within that range (from +.25 to +.70). (*Id.* at ¶¶ 26, 28, 30, 32.) This plainly does not support any claim for an alleged violation of 215 ILCS 5/462b.

Plaintiff urges the Court to adopt the novel proposition that ICW's explicit incorporation of underwriter judgment in its rate filing authorizes *any policyholder* to sue for violation of the Insurance Code if the policyholder disagrees with ICW's judgment. But this would defeat the entire premise of the Insurance Code (and the filed rate doctrine) because *the exact opposite is true*: where a Schedule Rating Plan is filed with and approved by the DOI; and where the Plan discloses (repeatedly) that underwriter judgment will be applied within a specified range; and where the applied SRMs were disclosed to Plaintiff and fell squarely within the specified range for each relevant policy year (2018, 2019, 2021, and 2022); then the Amended Complaint articulates no viable basis for a statutory or Insurance Code violation. (*See id.* at ¶¶ 15-17, 26, 28, 30, 32.)

For each policy year, ICW disclosed the minimum premium, the total estimated annual premium, the steps undertaken to calculate the premium pursuant to the Schedule Rating Plan, and the applied SRMs themselves. (*See id.* at Exs. B-E; *see also* Mem., pp. 3-4; Am. Compl., ¶¶ 26, 28, 30, 32.) If Plaintiff disagreed with the ICW underwriter's judgment in applying an SRM in Illinois, then *no cases hold that the Schedule Rating Plan somehow becomes illegal*. Indeed, Plaintiff cites *no authority* holding that the use of judgment in calculating SRMs on workers' compensation insurance policies can rise to a facial violation of the Illinois Insurance Code.[2] *See*

---

[2] Plaintiff suggests that ICW's Schedule Rating Plan requires "insureds' total SRMs [to] be determined *solely* by ICW's underwriters and *solely* by reference to the SRM[C]s[.]" (Opp., p. 3.) But the word "solely" is never used in the Schedule Rating Plan. (*See* Am. Compl., Ex. A.) Moreover, the Schedule Rating Plan sets forth *ten SRMCs* for ICW underwriters to consider—each of which allows for underwriter judgment. (*Id.*) The very concept of "judgment" allows for broad

*W. Bend Mut. Ins. Co.*, 794 F.3d at 677 ("[The insurer] may have some discretion in setting the precise Schedule Modification credit because its Schedule Rating Plan authorizes a broad range for each of these risk characteristics."). In absence of any factual basis supporting alleged violations of the Illinois Insurance Code, the Amended Complaint fails to state a claim for relief, and it must be dismissed. (*See* Mem., pp. 5-8.)

### III. Plaintiff Has Not Alleged A Breach Of Contract.

Plaintiff's breach of contract claim fails because it is *entirely premised* on the unsupported argument that ICW engaged in "illegal conduct" with regard to its public rate filings. (Opp., p. 10.) But Plaintiff simply ignores the facts that ICW's Schedule Rating Plan *explicitly permits* underwriters to use judgment in determining SRMs, and that the Policies themselves disclose that premiums are determined by ICW's "manuals of rules, rates, rating plans and classifications." (*See, e.g.*, 2018 Policy, p. 5; *see also* Mem., p. 8.) Relying again on unsupported conclusions that ICW's process of determining SRMs is allegedly "secret" and "pretextual," Plaintiff fails to identify any actual breach of the Policies, nor any factual support for the charging of premiums that were in any way allegedly "excessive." (*See* Mem., p. 8.) Therefore, Plaintiff's breach of contract claim fails as a matter of law.[3]

---

consideration of potentially relevant factors. For example, category I of the SRMC ("Financial Condition") allows underwriters to make a "[j]udgment based on the strength or weakness of the insured's financial condition," within the range from a credit (or discount) of -20% to a debit (or surcharge) of +20%. (*Id.*) In excising their judgment, underwriters can consider infinite factors affecting financial condition, and this does not inherently violate the Insurance Code as long as any modification remain bounded by the -20% to +20% range.

[3] It is unclear why Plaintiff cites to *West Bend* and 215 ILCS 5/462b in support of its argument that the remedy for a breach of contract would be "return of the premium attributable to the illegally calculated SRMs, plus pre-judgment interest." (Opp., p. 10.) In *West Bend Mutual Insurance Co.*, the Seventh Circuit found that the subject insurance policy did not explicitly allow the insurer offset a potential "ICC credit by temporarily inflating the Schedule Modification credit[.]" 794 F.3d at 672, 677. The Seventh Circuit affirmed an award of damages and pre-judgment interest, but did not articulate the basis for the damage award, and did not identify the

**IV.    Plaintiff Has Not Alleged Any Fraudulent Conduct, And Plaintiff Has Not Sufficiently Pled Its Fraud Claims Under Rule 9(b).**

Nothing in the Plaintiff's Opposition cures the failure of the Amended Complaint to identify any false statement, unfair conduct, or concealment on the part of ICW.  As stated above and in the Motion to Dismiss, ICW publicly disclosed in its approved Schedule Rating Plan how SRMs would be determined, and the fact that underwriters would exercise judgment in determining SRMs within a specified range.  (*See supra* pp. 2-6; *see also* Mem., pp. 3-4, 5-8, 10.) In a conclusory fashion, Plaintiff generally asserts that ICW "entirely lied about the true manner in which the SRMs would be calculated" (Opp., p. 11), but Plaintiff does not cite any portion of the Amended Complaint that factually supports such a contention.  *See Lebow*, 1987 WL 12186, at *1; *cf. Cheslow v. Cont'l Cas. Co.*, No. 21 C 4010, 2022 WL 1641888, at *6 (N.D. Ill. May 24, 2022) (dismissing consumer fraud claim and finding plaintiff adequately pled fraudulent concealment because she "described in detail the origins of the Policy and communications surrounding the premium rates"); *Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 773 (N.D. Ill. 2021) (plaintiff alleged false statement where he pleaded explicit language in the insurer's brochure that contradicted its actual actions taken).  Similarly, Plaintiff's vague allegations of unfairness do not support a viable fraud claim.[4]  (*See* Mem., p. 10.)  Finally, as to concealment, Plaintiff asserts throughout the Amended Complaint and the Opposition that ICW used a "secret"

---

remedy for any potential breach of contract under the circumstances of that case.  (*See id.*; *see also* Opp., p. 10.)  Notably, 215 ILCS 5/462b does not mention any remedy based on a purported *breach of contract*.  Instead, the provision identifies a remedy under the Illinois Insurance Code, with no mention of contractual damages or pre-judgment interest.  (*Compare* Opp., p. 10 *with* 215 ILCS 5/462b.)

[4] Plaintiff's reliance on *Casualty Insurance Co.* offers no support for the adequate pleading of an ICFA claim, because the case was adjudicated under the Illinois Code of Civil Procedure rather than the heightened pleading requirements of Rule 9(b).  *See Cas. Ins. Co.*, 323 Ill. App. 3d at 1036 ("These allegations … met the standards of section 2-612(b).").

and/or "pretextual" method to calculate its premiums, but these allegations are entirely unsupported and conclusory. (*See* Mem., pp. 10-11.) Plaintiff does not plead any key material facts allegedly concealed by ICW (*e.g.*, how does a purported "pretextual" method differ from the exercise of underwriter judgment; in what manner did the applied SRMs deviate from the Schedule Rating Plan; what renders the disclosed SRMs and premiums charged to policyholders somehow "illegal").

Additionally, the counts sounding in alleged fraud (Counts II, IV, and V) fail to satisfy the heightened pleading standard set forth in Rule 9(b). Rather than add any specificity to the fraud allegations, Plaintiff's Opposition instead highlights the deficiencies of the Amended Complaint. Again, Plaintiff cites no specific paragraphs of the Amended Complaint containing "particularized facts" in support of the fraud claims—and no such facts exist. (*See* Opp., p. 12; *see also* Mem., p. 11.) Instead, Plaintiff repeats the unsupported assertions about a "secret" or "pretextual" method of calculating SRMs, which cannot state a viable claim absent a *particularized factual basis*.[5] *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442-43, 447 (7th Cir. 2011) (although plaintiff did not use the phrase "information and belief," plaintiff's allegations merely provided "grounds for its suspicions," but it did not satisfy its "burden of

---

[5] Plaintiff attempts to distinguish three cases cited by ICW in its Memorandum. (*See* Opp., p. 12 n.16.) With respect to *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 737-39 (7th Cir. 2014), Plaintiff notes that the plaintiff "failed to provide any specific details" to support its fraud claims. But the circumstances are similar here, where Plaintiff has not alleged any *particularized facts* beyond the touchstones of "secret" and "pretextual." Similarly, in *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016), the plaintiff failed to "provide the specific names, dates, times, or content of the misrepresentations or omissions that give rise to the alleged fraud." Here, Plaintiff cannot point to any paragraph in the Amended Complain that describes the purported fraud with an adequate level of particularity. Finally, Plaintiff's citation to *Tyler v. Bank of N.Y. Mellon*, No. 19 CV 7863, 2020 WL 2735367, at *8 (N.D. Ill. May 26, 2020), reveals parallel problems to this case. *See id.* ("[Plaintiffs have not identified any concrete lies that they were told, who made those misrepresentations, or when and where they were made.").

pleading plausible grounds for suspecting that the defendant was engaged in a fraudulent scheme"); *cf. AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615-16 (7th Cir. 2011) (describing plaintiff's lengthy, detailed allegations of fraud, including particular dates and actions by defendant, and finding such allegations satisfied Rule 9(b)). Therefore, the Court should dismiss Plaintiff's alleged fraud-based claims.

**V.      The Voluntary Payment Doctrine Bars Plaintiff's Breach Of Contract And ICFA Claims.**

Notwithstanding the contrary protestations of Plaintiff's Opposition, the face of the Amended Complaint reflects that Plaintiff voluntarily paid ICW premiums "with full knowledge" of the relevant facts (such as the publicly filed and approved Schedule Rating Plan—including application of underwriter judgment; the minimum premium; the total estimated annual premium; the steps undertaken to calculate premium pursuant to the Schedule Rating Plan; and the applied SRM). Under these circumstances, the voluntary payment doctrine bars the counts for breach of contract and ICFA. *See McIntosh v. Walgreens Boots All., Inc.*, 2019 IL 123626, ¶ 35, 135 N.E.3d 73, 83.

In *McIntosh*, the Illinois Supreme Court applied the voluntary payment doctrine where the plaintiff did "not argue that he was *compelled* to pay the [disputed amount] because the purchase … was a necessity and could not have been obtained from any other source without paying the [disputed amount]." *Id.*; *see also id.* at ¶ 36 ("Where the nature and amount of a charge is fully disclosed, the plaintiff cannot successfully assert that he or she was operating under a mistake of fact with regard to the charge."); *Wermers Floorcovering, Inc. v. Santanna Nat. Gas. Corp.*, 342 Ill. App. 3d 222, 225-26, 794 N.E.2d 1012, 1015 (2003) ("[W]hen a party has alternative sources available and could have opted out of making a disputed payment, then the asset involved is not a 'necessity,' the duress exception does not apply, and the voluntary payments cannot be

recouped.").[6]   Here, Plaintiff has not alleged that it was "compelled" to pay the premium rates

disclosed by ICW, and Plaintiff does not contest that it could have obtained workers' compensation

insurance from one of ICW's many competitors—potentially for a lower premium.  *See Wermers*

*Floorcoverings*, 342 Ill. App. 3d at 225-26.  Instead, Plaintiff alleges that (a) ICW disclosed its

Schedule Rating Plan in accordance with DOI requirements (Am. Compl., ¶ 15-17), (b) ICW

disclosed Plaintiff's SRMs in each of the Policies (falling within in the range specified in the

Schedule Rating Plan) (*id.* at ¶¶ 26, 28, 30, 32), and (c) ICW disclosed the premiums to be charged

for each Policy year (*id.* at Exs. B-E).  *Not a single paragraph of the Amended Complaint* would

support a contention that Plaintiff was somehow unaware of the applied SRM or the premiums to

be charged; nor does the Amended Complaint hint at any basis for payment under coercion or

duress.  Therefore, the voluntary payment doctrine bars Plaintiff's claims.  *See McIntosh*, 2019 IL

123626, ¶¶ 35-36 (where the amount and nature of the charge were *fully disclosed* to plaintiff, the

voluntary payment doctrine applied).

Additionally, Plaintiff's suggestion that 215 ILCS 5/462b somehow "repeal[s] the right of

insurers to hold onto purportedly voluntary payments of insureds[,]" (Opp., p. 13), is belied by the

text of the statute itself *which makes no mention of the voluntary payment doctrine*.  (*See* 215 ILCS

5/462b.)  Instead, the plain language of 215 ILCS 5/462b applies only when an insurer uses

"incorrect classifications, payrolls, or any other factors of a rating system" resulting in a higher

premium than if the correct factors were used.  (*See* Opp., p. 13; *see also* 215 ILCS 5/462b.)  Here,

Plaintiff neither alleges that the applied SRMs were somehow *erroneous* based on Plaintiff's

---

[6] Plaintiff fails to distinguish *Wermers Floorcoverings*, where the court *did not* discuss whether the plaintiff had "full knowledge of the basis of the rates" for natural gas payments. (*Cf.* Opp., p. 13.)  Instead, the plaintiff claimed to have made the payments under duress—yet the court nevertheless applied the voluntary payment doctrine to bar the plaintiff's claims.  *See Wermers Floorcoverings*, 342 Ill. App. 3d at 225-26.

specific classification, payroll, or other factors; nor does Plaintiff even explicitly allege that the SRMs were *too high* where they fell within the range of underwriter judgment approved by the DOI. Therefore, 215 ILCS 5/462b does not preclude application of the voluntary payment doctrine, and the Court should dismiss Plaintiff's breach of contract and ICFA claims seeking "repayment" of premiums *voluntarily paid* by Plaintiff to ICW in consideration for coverage under the Policies.[7]

## VI.     Plaintiff's Equitable Relief Claims Fail.

Plaintiff asserts that it can seek equitable relief (*i.e.*, declaratory relief, injunctive relief, and disgorgement)[8] because it purportedly has no adequate remedy at law. Plaintiff's position is untenable based on the multiple counts in the Amended Complaint for monetary damages,

---

[7] Plaintiff notes the absence of cases applying the voluntary payment doctrine to workers' compensation insurance in Illinois. (*See* Opp., p. 13.) However, the doctrine broadly applies under Illinois law, and provides that "money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *McIntosh*, 2019 IL 123626, ¶ 22. Moreover, outside of the context of workers' compensation insurance, many state and federal courts have applied the voluntary payment doctrine to bar refunds of premium payments on insurance policies. *See, e.g.*, *Legum v. Blue Cross Blue Shield Healthcare Plan of Ga., Inc.*, No. 1:09-cv-558-BBM, 2009 WL 10669646, at *5-6 (N.D. Ga. Nov. 17, 2009) ("[E]ven if … the Plan did not bar [plaintiff] from receiving refunds for premiums paid …, the voluntary payment doctrine would prevent [plaintiff] from obtaining the relief that he seeks."); *Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969, 980-81 (N.D. Cal. 2019) (finding that plaintiff's conduct in continuing to pay premiums for policies with full knowledge of the basis of the amounts charged barred recovery under the voluntary payment doctrine); *Am. Cas. & Life Ins. Co. v. Boyd*, 394 S.W.2d 685, 690 (Tex. App. 1965) (barring recovery under voluntary payment doctrine where "appellee [did] not allege … that he paid any of the premiums which he seeks to recover because of any mistake of fact, or because of any fraud, deception, duress or coercion"); *cf. In re Trendsetter HR, LLC*, 596 B.R. 509, 514 (Bankr. N.D. Tex. 2019) (voluntary payment doctrine barred insured's recovery of medical bill review fees paid under workers' compensation insurance policy).

[8] Plaintiff abandoned the unjust enrichment claim (Count III) but did not explicitly abandon the request for disgorgement in the Prayer for Relief. (*See* Am. Compl., p. 22.) To the extent Plaintiff attempts to recover "disgorgement" without a corresponding unjust enrichment claim, the Court should bar such attempt based on the availability of an adequate remedy at law. *See, e.g.*, *Acosta-Aguayo v. Walgreen Co.*, No. 22-cv-00177, 2023 WL 2333300, at *8 (N.D. Ill. March 2, 2023) (dismissing disgorgement claim where plaintiff failed to allege lack of an adequate remedy at law).

including breach of contract, violation of ICFA, fraudulent concealment, and fraud. (*See* Opp., p. 15; *see also* Am Compl., ¶¶ 59, 71-73, 88, 96-97, 102, 104.)

Plaintiff further asserts that a 43-year old case from the Illinois Supreme Court somehow supports the ability to recover equitable relief under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201. (*See* Opp., p. 13 (citing *People ex rel. Fahner v. Am. Tel. & Tel. Co.*, 86 Ill. 2d 479, 485, 427 N.E.2d 1226, 1229 (1981)); *see also* Am. Compl., ¶ 100.) However, in *Fahner*, the Illinois Supreme Court narrowly construed the question whether a taxpayer could seek relief in Illinois state court for a tax issue instead of following prescribed administrative provisions of the Messages Tax Act. The Supreme Court actually found that declaratory relief was "*not available if the statute provides an adequate remedy at law.*" *Fahner*, 86 Ill. 2d at 485 (emphasis added). Additionally, Plaintiff's attempt to distinguish this Court's holding in *Wyant* is ineffective—in fact, the reasoning of *Wyant* has been subsequently applied to support dismissal of restitution and disgorgement claims where a plaintiff fails to allege an adequate remedy at law. *See Acosta-Aguayo*, 2023 WL 2333300, at *8 ("Plaintiffs fail to allege that they lack an adequate remedy at law, and so the Court dismisses their claims for restitution and disgorgement.") (citing *Wyant v. Dude Prods., Inc.*, No. 21-CV-00682, 2022 WL 621815, at *2 (N.D. Ill. Mar. 3, 2022)).

Finally, Plaintiff's speculative argument that it "may desire to purchase workers' compensation insurance from ICW in the future" is not enough to establish that it is *likely to suffer damage* from ICW's purported conduct in the future. Like the plaintiff in *Camasta*, Plaintiff "is now aware of [ICW's] sales practices" and, therefore, "is not likely to be harmed by the practices in the future." 761 F.3d at 741. Plaintiff's attempt to distinguish *Camasta* and *Wyant* on the basis that they supposedly did not involve "a product like workers' compensation insurance that one is *compelled by law* to purchase" is irrelevant—even if workers' compensation insurance is

12

mandatory for businesses, no law mandates purchases *from ICW*. (*See* Opp., p. 14 (citing 820 ILCS 305/4 (setting forth fines applicable where an employer "knowingly failed to provide coverage" and making no mention of a particular insurer from whom coverage must be procured)).) Plaintiff's claims for equitable relief must be dismissed as a matter of law.

**VII. Alternatively, The Primary Jurisdiction Doctrine And The Filed Rate Doctrine Bar Plaintiff's Claims.**

First, Plaintiff is wrong that the Court cannot dismiss under the primary jurisdiction doctrine—the United States Supreme Court holds that "[r]eferral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction *or, if the parties would not be unfairly disadvantaged, to dismiss the case* without prejudice." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993) (emphasis added). Here, Plaintiff has not asserted that it would be "unfairly disadvantaged" by dismissal and referral to the DOI, and therefore dismissal is an entirely appropriate remedy. *See, e.g.*, *Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*, No. 12-cv-5550-YGR, 2013 WL 3553979, at \*5 (N.D. Cal. July 12, 2013) (dismissing under doctrine of primary jurisdiction); *Avila v. Redwood Hill Farm & Creamery, Inc.*, No. 5:13-cv-00335-EJD, 2014 WL 2090045, at \*3 (N.D. Cal. May 19, 2014) (same); *cf. Goddess & Baker Wacker L.L.C. v. Sterling Bay Cos., L.L.C.*, 592 F. Sup. 3d 746, 757 (N.D. Ill. 2022) (staying instead of dismissing where it was "unclear when the statute of limitations [would] expire" and, therefore, dismissal would risk "unfairly prejudicing" the plaintiff).

Second, the cases cited by Plaintiff are inapposite. In *Corbin*, the Illinois Appellate Court found that the DOI did not have "primary jurisdiction to determine if the complained-of conduct by a regulated automobile insurance company constitutes an unfair or deceptive trade practice." *Corbin v. Allstate Corp.*, 2019 IL App (5th) 170296, ¶ 16, 140 N.E.3d 810, 816. The court found that primary jurisdiction did not apply because "[t]he alleged deceptive practices [were] not unique

13

to the insurance industry." *Id.* at ¶ 18. By contrast, Plaintiff's allegations here involve a comprehensive workers' compensation regulatory scheme, and the role of schedule rating plans and SRMs. (*See* Am. Compl.) In fact, the Illinois Insurance Code explicitly provides that consumers purporting to be aggrieved by an insurer's rate filing "may make written application to the Director for a hearing thereon[.]" 215 ILCS 5/458(3); *cf. Kaden v. First Commonwealth Ins. Co.*, No. 05 C 2212, 2009 WL 291192, at *6 (N.D. Ill. Feb. 4, 2009) (granting summary judgment to insurer where plaintiff had access to procedure under Illinois Insurance Code to file a complaint for administrative review). If the Amended Complaint were to otherwise state a claim, then the underlying allegations would benefit from the regulatory expertise of the Director of the DOI, who has "specialized knowledge" and the "technical expertise" regarding Plaintiff's central allegations. *See Corbin*, 2019 IL App (5th) 170296, ¶ 18; *see also Country Ins. & Fin. Servs. v. Roberts*, 2011 IL App (1st) 103402, ¶ 14, 951 N.E.2d 1217, 1219 (affirming dismissal of complaint under doctrine of primary jurisdiction).[9]

Finally, Plaintiff confusingly asserts the filed rate doctrine does not apply because Plaintiff is supposedly not "challenging the SR Plans ICW filed with the DOI." (Opp., p. 15.) Yet that is *exactly what Plaintiff purports to challenge*. Despite the explicit underwriting judgment and range of schedule rating explicitly permitted in ICW's approved public rate filing with the DOI (Am Compl., ¶¶ 15-17), Plaintiff contends that ICW's application of SRMs within the specified range

---

[9] The cases cited by Plaintiff are inapposite. *See Emps. Mut. Cos. v. Skilling*, 163 Ill. 2d 284, 288, 644 N.E.2d 1163, 1166 (1994) (finding that agency did not have specialized knowledge on a question of strict policy language interpretation); *W. Bend Mut. Ins. Co.*, 928 F. Supp. 2d at 980 (acknowledging that the DOI does not mediate pure contractual disputes, but noting that it may consider whether an insurer's rate filings comport with applicable regulatory provisions); *Cas. Ins. Co.*, 323 Ill. App. 3d at 1036-37 (without considering the doctrine of primary jurisdiction, there is no need to exhaust administrative remedies when 215 ILCS 5/457 does not explicitly provide a remedy).

is somehow improper (*id.* at ¶¶ 26, 28, 30, 32; *id.* at Ex. A), and yields premiums that "were not calculated in a lawful manner" (*id.* at ¶ 56). However, Plaintiff does not dispute that ICW applies SRMs within the specified range submitted to the DOI. (*See generally id.*) Thus, Plaintiff must acknowledge that the Amended Complaint does not include any contention that ICW charged rates outside the parameters of the approved DOI rate filing. To the extent Plaintiff contends there may be liability nevertheless based on the rate filings themselves or the purported adherence to the rate filings, such challenge is prohibited under the filed rate doctrine, and the Amended Complaint should be dismissed *as a matter of law. See Schilke v. Wachovia Mortg., FSB*, 758 F. Supp. 2d 549, 561 (N.D. Ill. 2010) ("[Illinois Insurance Code] provisions encompass and provide for DOI authority to disapprove rates, and thus are covered by the filed rate doctrine."); *cf. Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835-36 (N.D. Ill. 2011) ("*Schilke II*") ("[T]he filed rate doctrine bars courts from altering filed rates, and, by extension, prohibits a court from awarding a plaintiff damages based on the difference between a filed rate and an allegedly lawful rate. … [A]t least four courts of appeals have considered claims predicated on alleged failures to make certain disclosures in connection with a filed rate, and each has found such claims to be barred under the filed rate doctrine[.]").[10]

## CONCLUSION

For all the foregoing reasons and those set forth in the Memorandum, Defendant respectfully requests the Court dismiss Plaintiff's Amended Complaint in its entirety.

---

[10] Plaintiff's attempt to distinguish *Schilke II* is ineffective. Plaintiff incorrectly asserts that the plaintiff in *Schilke II* challenged only the *reasonableness* of the filed rate. (Opp., p. 15.) On the contrary, the plaintiff in *Schilke II* challenged, *inter alia*, the *lawfulness of the premium charge*. *Schilke II*, 820 F. Supp. 2d at 836 ("[p]laintiff's claims … rest on the allegation that the insurance premium charged … was unreasonable *and unlawful*") (emphasis added). Under *Schilke II*, such claims are "barred under the filed rate doctrine[.]" *Id.*

Dated:  March 1, 2024

Respectfully submitted,

By:  */s/ Mark L. Hanover*_____

**DENTONS US LLP**

Mark L. Hanover (ARDC # 6216201)
Kristine M. Schanbacher (ARDC # 6310112)
Emily C. Eggmann (ARDC # 6335831)
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel.:  (312) 876-8000
Fax:  (312) 876-7934
*mark.hanover@dentons.com*
*kristine.schanbacher@dentons.com*
*emily.eggmann@dentons.com*

Kelly R. Graf (*pro hac vice* forthcoming)
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Tel.:  (213) 623-9300
Fax:  (213) 623-9924
*kelly.graf@dentons.com*

*Attorneys for Defendant*
*Insurance Company of the West*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of March, 2024, a true copy of the foregoing **DEFENDANT INSURANCE COMPANY OF THE WEST'S CORRECTED REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** was served upon counsel of record via the Court's electronic case filing system.

*/s/ Mark L. Hanover*
Mark L. Hanover

*One of the Attorneys for Defendant*