UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| W.E.B. PRODUCTION & FABRICATING, INC., *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> INSURANCE COMPANY OF THE WEST, <br><br> Defendant. | Case No. 1:23-cv-15379 <br><br> Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff W.E.B. Production & Fabricating, Inc. ("W.E.B.") filed an amended class-action complaint against Defendant Insurance Company of the West ("ICW") alleging that ICW calculated and charged W.E.B. workers' compensation insurance premiums using an undisclosed and illegal methodology. In their complaint, W.E.B. brings six counts against ICW: (1) breach of contract; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (3) unjust enrichment; (4) fraudulent concealment; (5) fraud; and (6) declaratory and injunctive relief. ICW has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court grants ICW's motion to dismiss [15].

**Background**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from W.E.B.'s complaint, Dkt. 13, and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

ICW is a California corporation with its principal place of business in San Diego, California. ICW sells workers' compensation insurance in states across the country, including Illinois. W.E.B. is a full-service welding, fabricating, and steel erecting company.

Illinois has a "file and approve" system where each insurance carrier charges its own rates subject to scrutiny and approval by the Department of Insurance. The Illinois Insurance Code requires that carriers prefile "every manual of classifications, every manual of rules and rates, every rating plan, and every modification of the foregoing which it intends to use" with the Director of the Insurance Department (the "Director"). 215 ILCS 5/457(1). The Code further requires that filings "shall not be effective nor used until approved by the Director," 215 ILCS 5/457(4), and that "no person, company or organization shall willfully withhold information from, or knowingly give false or misleading information to the Director . . . which will affect the rates or premiums chargeable under this Article." 215 ILCS 5/467.

According to ICW's Schedule Rating Plans, which it has filed with the Insurance Department since at least 1997, the premiums ICW charges for workers' compensation may be modified by applying a Schedule Rating Modification ("SRM") to the insured's base premiums. ICW calculates this SRM by evaluating the insured's business across several Schedule Rating Modification factors ("SRMFs")[1] that relate to the insured's risk of facing workers' compensation claims, such as the condition of the premises, the insured's financial condition, and proximity of the premises to medical facilities. According to the Schedule Rating Plan, a policyholder's SRMFs, and consequent SRMs, are "based on evidence that is contained in the file of the insurer at the time the schedule debit or credit is applied" and in accordance with the judgment of ICW's underwriters.

---

[1] The Court notes that Plaintiff uses the term "SRMF" while Defendant uses the term "SRMC." For the sake of consistency, the Court uses the term "SRMF" throughout the opinion.

ICW ascribes an SRMF positive values ("debits") when the factor increases the risk of claims and negative values ("credits") when they reduce the risk of claims. The SRM is the aggregate of all debits and credits, which results in an SRM that may modify the premium within a range of -50% to +75%. For example, an insured could receive an SRM of 1.50 by being assigned a total combined debits of 50% without any corresponding offsetting credits. In calculating premiums, ICW multiplies the base premium of the policy by the SRM value, applying the increase from the base premium as a surcharge when the value is greater than 1.00 and applying the decrease from the base premium as a discount when the value is less than 1.00. In this way, ICW incentivizes policyholders to take steps to invest in measures that reduce their risk of workers' compensation claims with the promise of a potential decrease in their respective insurance premiums.

Between 2018 and 2022, W.E.B. purchased four workers' compensation insurance policies (the "Policies") from ICW. In each policy, ICW states that "all premium for this policy will be determined by [ICW's] manuals of rules, rates, rating plans and classifications," and that any changes must be "authorized by law or a governmental agency." The Policies further state that the final premium will be determined by "rates that lawfully apply to the business."

Contrary to these statements, W.E.B. alleges that beginning as early as 1997, ICW has been using a secret, undisclosed methodology, or "Pretextual Method," to calculate insureds' SRMFs, SRMs, and final premiums. According to W.E.B., under this Pretextual Method, ICW first calculates what it believes to be the minimum SRM needed to obtain a sufficient profit for each policy. ICW then allegedly requires its underwriters to assign pretextual values to the SRMFs to meet or exceed the minimum SRM (and consequent premium) sought by ICW. By using this Pretextual Method, W.E.B. alleges that ICW charged W.E.B approximately $79,757.03 in excess premiums.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L.Ed.2d 233 (2011). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). While a plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss, she still must provide more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" for her complaint to be considered adequate. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). When ruling on a motion to dismiss, courts "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019).

**Discussion**

W.E.B. brings six counts against ICW in their amended complaint: (I) breach of contract; (II) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (III) unjust enrichment; (IV) fraudulent concealment; (V) fraud; and (VI) declaratory and injunctive relief. In their response to ICW's motion to dismiss, W.E.B. states that they no longer seek to press Count III. (Dkt. 34 at 2.) As such, the Court grants ICW's motion to dismiss regarding Count III.

A. *Count I: Breach of Contract*

To adequately plead a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resulting injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999); *Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 730 (7th Cir. 2014). Because the parties do not dispute the first two elements, the Court focuses on the question of whether there was a breach of contract by ICW that resulted in injury to W.E.B.

In its complaint, W.E.B. alleges that ICW's use of the Pretextual Method to calculate insurance premiums breached the terms of its insurance policies with W.E.B. in two ways: (1) by breaching the term of the policy stating that "[a[ll premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications" and (2) the term stating that "[t]he final premium will be determined after this policy ends by using . . . the proper classifications and rates that lawfully apply to the business and work covered by this policy." (Dkt. 13, ¶54–55).

ICW contests these allegations. First, ICW argues that the breach of contract claim fails as a matter of law because ICW's rate filing permits underwriters to use judgment in determining SRMs. (Dkt. 15 at 8.) ICW further argues that labeling ICW's process as being "secret" and "pretextual" does not state a claim "where the policy *allows* for an SRM range of -50% to +75%, and where the SRMs applied by ICW fell within that range." (*Id.*) (emphasis in the original).

ICW's argument prevails because W.E.B. has failed to provide any factual allegations to support their claim that ICW uses a pretextual method to calculate their premiums. W.E.B. goes through great pains in their complaint to outline the provisions of the Illinois Insurance Code that govern the filing of premium-calculation plans by insurers before asserting that ICW violated each of these provisions by using a secret and undisclosed Pretextual Method. But despite the time spent laying out these legal conclusions, the only facts W.E.B. provides to support their allegations that ICW

breached the terms of their insurance policies by using this Pretextual Method are the SRMs assigned to W.E.B.'s policies from 2018 to 2022, each of which fall within the range allowed for under the terms of the policy. (Dkt. 13, Ex. B–F.)[2]

More is needed for W.E.B.'s claim of breach of contract to be sufficiently pled. While a court must accept as true all factual allegations contained in a complaint when evaluating a motion to dismiss under Rule 12(b)(6), this tenet does not apply to legal conclusions—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And while the plausibility standard required under Rule 8 of the Federal Rules of Civil Procedure is not a "probability requirement," "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Because W.E.B. fails to allege sufficient facts necessary to establish the third element of a claim for breach of contract, the Court need not address the last factor regarding injury. For these reasons, the Court dismisses Count I of W.E.B.'s amended complaint.

B. *Counts II, IV, and V: Violation of ICFA, Fraudulent Concealment, and Fraud*

W.E.B. brings three different fraud claims that each stem from ICW's alleged use of the Pretextual Method to calculate insurance premiums. First, W.E.B. claims that ICW's "failure to file, or publicly disclose, its true method of calculating insureds' SRMFs and SRMs, and [ICW]'s deceit in claiming to use an entirely different methodology, constitute unfair/and or deceptive acts" prohibited under ICFA. (Dkt. 13, ¶ 65.) Next, W.E.B. claims that in using the Pretextual Method, ICW

---

[2] In responding to ICW's motion to dismiss, W.E.B. submitted documents that had been produced by ICW in a similar action against ICW in the Superior Court for the State of California for the County of San Diego, *Mak Construction Inc. v. Insurance Company of the West*, Case No. 37-2022-00037382-CU-BC-CTL. (Dkt. 35.) Because these documents are neither attached to nor referenced in W.E.B.'s amended complaint, the Court does not consider these documents in its evaluation of ICW's motion to dismiss. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019).

fraudulently concealed the fact that it would not be calculating insured's SRMFs and SRMs based on the method detailed in its Schedule Rating Plans. (Dkt. 13, ¶¶ 82–86.) And finally, W.E.B. claims that ICW's representations that it would calculate insured's premiums based on the Schedule Rating Plans were "deceptive, false, and misleading because, at the time they were made, [ICW] knew that it did not, and would not, use the method of calculating SRMFs and SRMs stated in its publicly-filed Schedule Rating Plans" and instead used the Pretextual Method. (Dkt. 13, ¶ 92.)

Although distinct in name, each of these claims suffers from the same fatal flaw: the lack of any factual allegations supporting them. Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake." While the precise level of particularity required to meet this standard necessarily varies depending on the case, Rule 9(b) requires that a party describe "the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (Seventh Circuit 2014).

Repeatedly stating that ICW uses a "Pretextual Method" to calculate its insurance premiums is not a substitute for factual allegations supporting a claim of fraudulent conduct. As the Court noted in evaluating W.E.B.'s breach of contract claim, the only facts W.E.B. provides in support of their fraud claims are their insurance policies with ICW from 2018 to 2022. But beyond stating the assigned SRM and the commensurate surcharge ICW added to their premiums, W.E.B. does not explain how these policies support their claim that ICW used the Pretextual Method to calculate these premiums.

Presented with such cursory support, the Court "will not fill this void by crafting arguments and performing the necessary legal research" on W.E.B.'s behalf. *Shipley v. Chicago Bd. Of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020). Nor can such an attenuated argument, unsupported by any particularized facts supporting their suspicions, "unlock the doors of discovery" for W.E.B. under the pleading standard required under Rule 8 or under Rule 9(b). *Iqbal*, 556 U.S. at 678–79. The court's holding in *Cheslow v. Continental Casualty Company*, No. 21 C 4010, 2022 WL 1641888 (N. Dist. Ill. May

24, 2022) (Kendall, J.), is indeed instructive of this point. There, the defendant argued that the plaintiff, in alleging that the defendant had raised premiums in violation of the terms of its contract, had "failed to specifically allege the "who, what, when, where, and how" of the alleged fraud in violation of Fed. R. Civ. P. 9(b)." *Id.* at *7. The court disagreed, noting that the plaintiff there had "described in detail the origins of the Policy and communications surrounding the premium rates over the course of her membership in the group Policy." Absent comparable particularized facts, W.E.B.'s fraud claims fail to meet the pleading standard required by Rule 9(b).

It appears that W.E.B. is attempting to circumvent Rule 9(b)'s heightened pleading requirements, by arguing that ICW's use of the Pretextual Method was not only "deceptive" but also "offend[s] established public policy" and therefore constitutes unfair conduct under ICFA. The Supreme Court of Illinois has held that recovery under ICFA "may be had for unfair as well as deceptive conduct." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 679 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.,* 201 Ill. 2d 403, 266 Ill. Dec. 879, 775 N.E.2d 951, 960 (2002). "Deceptive conduct" and "unfair conduct" each have distinct pleading standards. If a claim rests on allegations of deceptive conduct, then the claim must be plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (quoting *Camasta*, 761 F.3d at 736–37). In contrast, if a claim rests on allegations of unfair conduct, the Court considers three factors: (1) whether the conduct "offends public policy"; is "immoral, unethical, oppressive, or unscrupulous"; or "causes substantial injury to consumers." *Id.* at 739 (*quoting Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014).

Still "a claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate 9(b)'s heightened pleading requirements." *Camasta*, 761 F.3d at 737 (quoting *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–

47 (7th Cir. 2011)). Such is the case here. Despite alleging unfair conduct, W.E.B.'s claims that ICW's acts "offend public policy" are nevertheless grounded in the same fraudulent conduct as its deceptive conduct claims. *See Camasta,* 761 F.3d at 737 (holding that "[s]imply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [a plaintiff's] allegations are entirely grounded in fraud under the ICFA"). As such, W.E.B.'s unfair conduct claim under ICFA must meet—and similarly fails to meet—the heightened pleading requirement of Rule 9(b) applied to their deceptive conduct and fraud claims.

For these reasons, the Court dismisses Counts II, IV, and V of W.E.B.'s amended complaint.

C. *Count VI: Declaratory and Injunctive Relief*

In their final claim for relief, W.E.B. seeks a declaration that it is a violation of Illinois law, and the terms of ICW's insurance policy, for ICW to "calculate policyholders' SRMFs, SRMs and consequent premiums using the Pretextual Method or any other method not filed with, and approved by, the Insurance Department," and injunctive relief permanently enjoining ICW from using this Pretextual Method or " any other method not filed with and approved by the Insurance Department, to calculate policyholders' SRMFs, SRMs or premiums." (Dkt. 13, ¶¶ 98–104.)

Neither form of equitable relief is appropriate here. 28 U.S.C. § 2201 provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See also* Fed. R. Civ. P. 57. As the Seventh Circuit has explained, "[d]eclaratory judgments are not meant to simply proclaim that one party is liable to another." *Johnson v. McCuskey*, 72 F. App'x 475, 478 (7th Cir. 2003). Instead, as stated by § 2201, declaratory judgments "are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct." *Id.*

The declaration W.E.B. seeks would not further define the legal rights and obligations of the parties any more than what is already provided by Illinois Insurance Code, which requires that "[e]very company shall prefile with the Director every manual of classifications, every manual of rules and rates, every rating plan and every modification of the foregoing which it intends to use," 215 ILCS 5/457(1), and provides that "[n]o person, company or organization shall willfully withhold information from, or knowingly give false or misleading information to the Director [of the Insurance Department], . . . which will affect the rates or premiums chargeable under this Article." 215 ILCS 5/467. And were W.E.B. successful on its claims of breach of contract and violation of ICFA, the relief granted under those claims would serve the same effect as the declaratory relief sought. For these reasons, the Court denies W.E.B.'s request for declaratory relief.

Further, W.E.B. lacks standing for injunctive relief. To establish standing under Article III, a plaintiff must show: (1) she suffered an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable judicial decision. *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021). To establish injury-in-fact for injunctive relief, "a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (*quoting O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Since W.E.B. is now aware that ICW allegedly uses a Pretextual Method to calculate insurance premiums, there is no risk of future deception by ICW and therefore W.E.B. is not likely to be harmed by the insurer in the future. *Id.*; *see also Hamidani v. Bimbo Bakehouse LLC*, No. 22-CV-01026, 2023 WL 167513 (N.D. Ill. Jan. 12, 2023) (Coleman, J.) ("[O]nce a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm.").

For these reasons, the Court dismisses Count VI of W.E.B.'s amended complaint.

**Conclusion**

For these reasons, the Court grants Defendant's motion to dismiss as to Counts I, II, III, IV, V, and VI of Plaintiff's amended complaint [15]. Plaintiff is granted leave to amend their complaint within 30 days if they have a good faith basis for believing they can cure the pleading deficiencies identified in this opinion. If Plaintiff does not file their amended complaint within 30 days from the date of this Order, Plaintiff's case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 11/8/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge