## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| W.E.B. PRODUCTIONS & FABRICATING, INC., *individually and on behalf of all others similarly situated,* | ) ) ) | |
| | ) | Case No. 1:23-cv-15379 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| INSURANCE COMPANY OF THE WEST, | ) | |
| | ) | |
| Defendant. | | |

## ORDER

Plaintiff, W.E.B. Production & Fabricating, Inc. ("W.E.B."), filed a Second Amended Complaint ("SAC") against Defendant Insurance Company of the West ("ICW") alleging that ICW calculated and charged W.E.B. workers' compensation insurance premiums using an undisclosed and illegal methodology. In its Complaint, Plaintiff brings four counts against Defendant: (1) breach of contract; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (3) fraudulent concealment; and (4) fraud. Defendant has moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and to strike Plaintiff's class allegations under Federal Rule of Civil Procedure 23(d)(1)(D). The Court previously granted Defendant's Motion to Dismiss [15] all counts of Plaintiff's Amended Complaint [13] ("FAC") based on pleading deficiencies. Because Plaintiff failed to cure the deficiencies outlined in the Court's Opinion [84] and for the reasons outlined below, the Court grants Defendant's Motion to Dismiss with prejudice [97]. Accordingly, Defendant's Motion to Strike Plaintiff's Class Allegations [100] is stricken as moot.

1

**BACKGROUND**

While the Court presumes the parties are familiar with the pertinent facts underlying this litigation, as outlined in the Court's prior Order granting Defendants' Motion to Dismiss, the Court will describe facts relevant to the pending motion as pled in Plaintiff' Second Amended Complaint.

Plaintiff purchased four workers' compensation insurance policies from Defendant effective for the periods January 28, 2018, through January 28, 2019 ("2018 Policy"), January 28, 2019, through January 28, 2020 ("2019 Policy"), January 28, 2021, through January 28, 2022 ("2021 Policy") and January 28, 2022, through January 28, 2023 ("2022 Policy"). Each policy contained a "Disclosure Provision" representing that "[a]ll premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. Each policy also contained a "Lawful Provision" representing that "[t]he premium shown on the Information Page, schedules, and endorsements is an estimate and that the final premium will be determined after [the policy] ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by [the] policy." Finally, each policy contained a "Refund Provision," providing that if the final premium is less than the estimated premium the insured paid, I.C.W. will refund the balance to insured.

In addition to its Disclosures, Defendant is regulated by Illinois' "file and approve" system for workers' compensation insurance where each insurer charges its own rates but is subject to scrutiny and approval by the Illinois Insurance department ("Insurance Department") to protect workers and their employers. Insurers are subject to numerous statutory and regulatory requirements including that they pre-file with the Director of the Insurance Department (the "Director") the complete method they will use to calculate every aspect of their insurance rates (i.e. premiums) before charging such rates, including any rating plan and/or schedule rating plan the insurer plans to use. 215 ILCS 5/457(1). Pursuant to 215 ILCS 5/457(3), these filings "shall be open to public inspection as soon as

2

filed." 215 ILCS 5/457(4) also requires that a "filing shall not be effective nor used until approved by the Director."

Defendant has filed its mandated "Schedule Rating Plans" with the Insurance Department detailing the methodology it would use to calculate its "Schedule Rating Modification" ("SRM") multiplier ("SRM Multiplier"), and any consequent increased portion of premiums determined by the SRM Multiplier (the "SRM Charge"). According to Defendant's Schedule Rating Plan since at least May 2009, a policyholder's SRM, and consequent SRM Charge, are "based on evidence that is contained in the file of the insurer at the time the schedule debit or credit is applied" and in accordance with the "judgment of [Defendant's] underwriters."

Schedule Credits are represented by negative percentages and are to be granted when an insured's business or business practices are less likely to incur loss claims than the average similar business. For example, if the insured provided employee benefits that were better than what an average similar business provides, the insured should receive a Schedule Credit for the "Employee Benefits" SRM Factor that would, all else being equal, reduce the insured's total final premium by lowering the SRM Multiplier. By contrast, if an insured provided less benefits to its employees than the norm, it should receive a Schedule Debit that would increase its final premium by increasing the SRM Multiplier. Under the approved Schedule Rating Plans, the underwriters are then required to add up the SRM Factor Credits and Debits to determine the SRM Multiplier to be applied to the insured's Base Premium. To simplify, under the Schedule Rating Plan, better business practices decrease the SRM Multiplier and consequent final premium.

Contrary to Disclosures in the policies at issue and Defendant's Schedule Rate Plan, Plaintiff alleges Defendant has, for years, secretly determined the SRM Multipliers and final SRM Charges using an undisclosed and illegal "Pretextual Method," which focuses largely on ensuring Defendant collects at least a "Minimum Required Profit." Plaintiff further alleges that from as early as 2002, Defendant

3

has secretly calculated insureds' SRM Multipliers, and consequent final SRM Charges, using the unfiled and unapproved Pretextual Method instead of the methodology Defendant claims to use in its approved Schedule Rating Plans. Ultimately Plaintiff alleges that, by using this Pretextual Method, Defendant charged W.E.B approximately $78,855.00 in excess premiums.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). While a plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss, they still must provide more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" for their complaint to be considered adequate. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

## DISCUSSION

### I. Defendant's Motion to Dismiss

Plaintiff brings four counts against Defendant: (1) breach of contract; (2) violation of the ICFA; (3) fraudulent concealment; and (4) fraud.

#### 1. Count I: Breach of Contract

4

To adequately plead a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resulting injury to the plaintiff. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999); *Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 730 (7th Cir. 2014). Because the parties do not dispute the first two elements, the Court focuses on the question of whether there was a breach of contract by Defendant that resulted in injury to Plaintiff.

Previously, the Court determined Plaintiff failed to provide sufficient facts to prove that Defendant breached the terms of their insurance policies by using a Pretextual Method to determine the SRMs assigned to Plaintiff's policies from 2018 to 2022 since each of the relevant SRMs fell within the range allowed for under the terms of the policy. (*See* Dkt 84. at 5-6).

In its Second Amended Complaint, Plaintiff alleges that Defendant specifically breached the "Disclosure Provision," of its policy (representing that "[a]ll premiums for this policy will be determined by [their] manuals of rules, rates, rating plans and classifications") by charging Plaintiff and the Class final SRM Charges based on SRM Multipliers that were not determined by Defendant's "manuals of rules, rates, rating plans and classifications," such as minimum required profit. (*See* Dkt. 89, ¶¶ 210-11). Second, Plaintiff alleges that Defendant violated its "Lawful Provision" (representing that the final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy") by using a "unlawful, unfiled and unapproved Pretextual Method." (*Id.* ¶¶ 214-15). Finally, Plaintiff alleges Defendant violated its "Refund Provision" (representing "if the final premium is…[less] than the premium [insured] paid, [Defendant] will refund the balance") [1]by not

---

[1] For purposes of this Order, the court only incorporates the relevant portions of the "Refund Provision," which states in whole: "[the] final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you."

refunding Plaintiff and the Class the "illegal and improper" final SRM Charges and thus fail[ing] to deliver a bargained-for benefit. (*See id.* ¶¶ 218-20).

Defendant contests these allegations and argues first, that Plaintiff fails to identify any injury or damage to Plaintiff since there is no dispute that the SRM Multiplier applied to Plaintiff's policies always fell within the prescribed range set forth in the Schedule Rating Plan. (Dkt. 98 at 5). Second, the Defendant argues that because the discretionary premium increase was quoted to Plaintiff at beginning of each policy period, and Plaintiff voluntary accepted the quote and received the full benefit of the bargain., its claims are barred by the voluntary payment doctrine. (*Id.* at 15). Finally, the Defendant notes that the SAC offers no factual basis to suggest that Plaintiff did not receive the full benefit of the bargain. (*Id.* at 5-6).

The Court agrees with Defendant that the Plaintiff has not sufficiently set forth facts detailing breach of contract by Defendant nor resulting injury. Plaintiff's legal conclusion that Defendant's "Pretextual Method" is "unlawful" does not in itself establish injury or fact of damages and does not allow for an inference that Plaintiff did not receive the benefit of the bargain. Ultimately, Plaintiff fails to allege any tangible breach since the Defendant repeatedly disclosed the SRM premium that would be charged, the multiplier used to derive the SRM, and, importantly, that the amount would be subject to "judgment" within a specified range. The Plaintiff also failed to identify any tangible financial loss since all relevant SRM premiums fell within the prescribed range set forth in the Schedule Rating Plan.

Because Plaintiff fails to cure the pleading deficiencies necessary to establish injury or existence of damages, the court dismisses Count I of Plaintiff's Second Amended Complaint.

### 2. *Count II, III, and IV: Violation of ICFA, Fraudulent Concealment, and Fraud*

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake." While the precise level of

particularity required to meet this standard necessarily varies depending on the case, Rule 9(b) requires that a party describe "the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014).

In the November 8, 2024, dismissal order, this Court ruled that Plaintiff was seeking to circumvent Rule 9(b)'s heightened pleading requirements, without providing the requisite particularized facts. Beyond stating the SRM and the commensurate surcharge Defendant added to their premiums, the Court determined Plaintiff failed to "failed to specifically allege the "who, what, when, where, and how" of the alleged fraud in violation of Fed. R. Civ. P. 9(b). (Dkt. 84 at 8).

In its SAC, Plaintiff alleges that Defendant fraudulently concealed that it was not calculating the SRM Multipliers and consequent final SRM Charges based on its approved Schedule Rating Plan (*id.* ¶ 255), and falsely misrepresented that it would only determine premiums by using its approved Schedule Rating Plan. (*Id.* ¶ 264). Plaintiff also further defines and details the alleged "Pretextual Method" at issue, explaining that first, Defendant uses a proprietary algorithm to generate a minimum amount of profit for each policy; second, it calculates the minimum SRM Multiplier that must be applied by Defendant in order to meet or exceed the Minimum Premium; third, it requires underwriters to apply the minimum SRM Multipliers in pricing prospective policies at or above the Minimum Premium; and fourth, it conceals these prior steps by recording pretextual Schedule Credits and Debits, and pretextual rationales for the credits and debits, that add up to the SRM Multiplier selected. (Dkt. 89, ¶¶ 16-18). Plaintiff ultimately argues that Defendant's failure to disclose to Plaintiff and the Class its consideration of and use the "Pretextual Method" described above, violated the ICFA's prohibition on unfair or deceptive acts or practice, constituted fraudulent concealment, and constituted fraud. (*See id.* ¶¶ 234-35, 255,264); 815 ILCS 505/2.

In its Motion, Defendant rebuts Plaintiff's mechanisms for recovery under the ICFA and denies all allegations in fraud. First, Defendant argues that Plaintiff cannot recover from the refund

7

mechanism of the ICFA, 215 ILCS 5/462b, since that provision requires that Plaintiff actually demonstrate that it was charged in excess; the Plaintiff attacks the method by which the SRM was determined, but it never adequately alleges that premiums would have been lower if Defendant had used an allegedly proper calculation methodology.  (*See* Dkt. 98 at 8.)  Second, with respect to 215 ILCS 5/467, which prohibits any person or entity from willfully withhold[ing] information from, or knowingly giv[ing] false or misleading information to the Director, Defendant argues the SAC does not allege how Defendant's allegedly improper calculation negatively "affected the rates or premiums chargeable" or caused the requisite harm for recovery under that provision.  (*See* Dkt. 98 at 9.)  Third, Defendant argues its disclosure of the amount of SRM and that it makes discretionary changes to premiums in accordance with the SRM, negates any alleged misrepresentation.  (*See id.* at 10.)  Finally, Defendant argues that Plaintiff's fraudulent concealment and fraud claims should be dismissed since each count necessitates a pleading of actual damage independent from or additional to breach of contract damages, which was not adequately alleged.  (*Id.* at 11-12.)

Once again, the Court agrees with Defendant that Plaintiff's fraud claims still fail.  While Plaintiff provides additional details regarding Defendant's alleged pretextual method, Plaintiff still fails to articulate that it suffered actual, pecuniary loss as a result of Defendant's Pretextual Method. Plaintiff does not sufficiently plead that it paid more than the actual value for purposes of recovery under the ICFA.  *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014).  Plaintiff has yet to meet the requisite requirement that it suffered actual damage as a result of Defendant's alleged violations of the ICFA.  *See id.* at 739-40 (finding plaintiff "got the benefit of their bargain" since the they agreed to pay a certain price for the defendant's merchandise, did not allege the merchandise was defective or worth less than what they actually paid, and did not allege that they could have shopped around and found a better price in the marketplace).

8

Plaintiff additionally failed to allege the requisite damage resulting from reliance on Defendant's false statements to maintain fraud and fraudulent concealment claims under Illinois law. *See Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 571 (7th Cir. 2012); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers*, LLP, 475 F.3d 824, 841 (7th Cir. 2007). Similarly, Plaintiff's failure to effectively allege damage also impacts its ability to overcome the "filed rate doctrine." Federal courts, have long applied the filed rate doctrine to bar judicial adjustments of rates filed with regulators. *S. Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646, 650 (7th Cir. 2022). Plaintiff concession that it does not challenge whether the SRM multipliers were within permissible ranges, (Dkt. 108 at 15), independently dooms any claim of injury since it failed to identify how the amount of the SRM premiums actually charged differ from the amounts authorized to be charged under the law.

For these reasons, the Court dismisses Counts II, III, and IV of Plaintiff's Second Amended Complaint.

Because the Court does not find that the case may otherwise proceed, it will not rule on the Parties' arguments regarding referring the action to the primary jurisdiction of the Illinois Insurance department.

## II.    Certificate of Appealability

Finally, this Court addresses Plaintiff's request for leave to amend its Complaint if the Court determines that Plaintiff's allegations are deficient at this stage. (Dkt. 109 at 15). A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). Plaintiff has amended its Complaint twice and still failed to move its claims across the plausibility threshold. Its present request has also failed to outline how additional amendment

9

would correct deficiencies. *See Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (denying leave to amend where a second amended complaint pleaded in wholly conclusory terms and did not cure prior pleading deficiencies). Accordingly, this court denies Plaintiff leave to amend its Second Amended Complaint.

**CONCLUSION**

For these reasons, the Court grants Defendants' Motion to Dismiss with prejudice [97]. Civil case terminated.

**IT IS SO ORDERED.**

Date: 9/16/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge